IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division

|  |  |
|---|---|
| ESTEBAN H., ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> KILOLO KIJAKAZI, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> ) | Case No. 2:21cv617 |

**REPORT AND RECOMMENDATION**

Plaintiff Esteban H. ("Plaintiff") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the final decision of Defendant Kilolo Kijakazi, the Acting Commissioner of the Social Security Administration ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") under the Social Security Act. This action was referred to the undersigned United States Magistrate Judge ("the undersigned") pursuant to 28 U.S.C. § 636(b)(1)(B)–(C), Federal Rule of Civil Procedure 72(b), Eastern District of Virginia Local Civil Rule 72, and the April 2, 2002, Standing Order on Assignment of Certain Matters to United States Magistrate Judges. ECF No. 8.

Presently before the Court are the parties' cross motions for summary judgment, ECF Nos. 10, 13. After reviewing the briefs, the undersigned makes this recommendation without a hearing pursuant to Federal Rule of Civil Procedure 78(b) and Eastern District of Virginia Local Civil Rule 7(J). For the following reasons, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 10, be **DENIED**, the Commissioner's Motion for Summary

Judgment, ECF No. 13, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this matter be **DISMISSED WITH PREJUDICE**.

## I. PROCEDURAL BACKGROUND

Plaintiff protectively filed an application for DIB on August 28, 2020, alleging disability due to scrotal and abdominal pain along surgery scar, pain disorder with related psychological factors, benign prostatic hyperplasia with lower urinary tract symptoms, testicular cancer, chronic bronchitis, back pain, sciatica, cervicalgia, migraines, and prediabetes. R. at 288–89.[1] Plaintiff's application was initially denied on October 29, 2020, and again denied upon reconsideration on November 24, 2020. R. at 288, 295. Plaintiff requested a hearing before an administrative law judge. R. at 365.

A hearing was held on May 6, 2021, at which Plaintiff appeared with counsel before Administrative Law Judge Jeffrey Jordan ("the ALJ"). R. at 261–81. Both Plaintiff and an impartial vocational expert testified at the hearing. R. at 265–80. On June 3, 2021, the ALJ issued a decision finding Plaintiff not disabled. R. at 226–42. Plaintiff filed a request with the Appeals Council to reconsider the ALJ's decision, which was denied on September 13, 2021, making the ALJ's decision the final decision of the Commissioner. R. at 1–3.

Having exhausted his administrative remedies, on November 15, 2021, Plaintiff filed a Complaint for judicial review of the Commissioner's decision. ECF No. 1. On March 28, 2022, Plaintiff filed a motion for summary judgment and accompanying memorandum in support. ECF Nos. 10–11. On April 25, 2022, the Commissioner filed a motion for summary judgment and brief in support. ECF Nos. 13–14. Plaintiff filed a reply on May 16, 2022. ECF No. 15. Because the motions are fully briefed, the matter is now ripe for recommended disposition.

---

[1] "R." refers to the certified administrative record that was filed under seal on February 23, 2022. ECF No. 7, pursuant to Eastern District of Virginia Local Civil Rules 5(B) and 7(C)(1).

## II. RELEVANT FACTUAL BACKGROUND

The Record included the following factual background for the ALJ to review:

Plaintiff was forty-five years old at the time of his alleged disability onset date of June 27, 2020. R. at 289. Plaintiff earned a college degree, and previously worked as a meteorologist and an intelligence specialist in the Navy. R. at 267. At the time of the ALJ hearing, Plaintiff lived with his wife and two teenaged children. R. at 266.

### A. Plaintiff's Medical Records Relevant to His Alleged Impairments

Prior to his alleged onset date, Plaintiff under underwent a left orchiectomy due to testicular cancer in September 2017. *Id.* In February 2019, a Licensed Clinical Psychologist diagnosed Plaintiff with Somatic Symptoms Disorder.[2] R. at 2101. On April 3, 2020, shortly before Plaintiff's alleged onset date, Plaintiff presented to Dr. Vernon E. Mackie for phantom testicular pain. R. at 652–53. Dr. Mackie noted that there was no evidence of disease on recent imaging or tumor markers. R. at 652–53. Plaintiff was experiencing phantom testicular pain, but noted his pain was better controlled since starting acupuncture. R. at 652–53. He otherwise had no complaints, and reported he was not feeling tired or tiring easily. R. at 652–53.

Plaintiff followed up with Dr. Mackie in October 2020, where his CT scan and tumor markers were negative. R. at 1725. Dr. Mackie noted that Plaintiff medically retired from the Navy for complications secondary to his orchiectomy. R. at 1725. At the request of Plaintiff's primary care physician, Kinesiotherapist Anthony Jones conducted a virtual exam of Plaintiff and found that he had -4/5 strength in his extremities. R. at 2455–56. He further found that Plaintiff's

---

[2] Somatic symptom disorder "happens when a person feels significantly distressed about physical symptoms and has abnormal feelings and behaviors in response to them." *Somatic Symptom Disorder in Adults*, Cleveland Clinic, https://my.clevelandclinic.org/health/diseases/17976-somatic-symptom-disorder-in-adults (last visited December 16, 2022).

3

range of motion was within functional limitations overall, with the exception of his hip flexion deficit on the left was worse than his right. R. at 2456. He further noted that Plaintiff was unable to perform full trunk flexion. R. at 2456. Plaintiff's grip strength bilaterally was good. R. at 2456. At the time, Plaintiff rated his pain as a four out of ten, but noted his pain elevates to an eight or ten out of ten with spasms. R. at 2456.

Plaintiff participated in physical therapy at Pivot Physical Therapy in 2021. R. at 2603. On February 10, 2021, Plaintiff's physical therapist noted that Plaintiff was experiencing hip pain that has been present since his orchiectomy. R. at 2603. Plaintiff reported "a burning sensation that comes from the l[eft] hip and radiates down the anterior thigh to the foot that increases with sitting/walking." R. at 2603. Plaintiff also reported that in January 2021, he was undressing to shower and his back "locked up," causing him pain he rated as a ten out of ten. R. at 2603. It was noted that before this "back flare up" Plaintiff had poor seated posture, poor sitting tolerance, and walked with a cane. R. at 2603. He reported that since then, he has had difficulty walking, bending, getting up from a chair, and sleeping through the night. R. at 2603. At the time of his visit, Plaintiff rated his pain as a four out of ten, and reported that at best his pain was a three out of ten, and at worst, a ten out of ten. R. at 2606.

Plaintiff continued to report to physical therapy, and his pain improved some. R. at 2582–2603. On February 24, 2021, Plaintiff reported his pain has improved slightly and stated that ease of movement has improved since his back flare up, but he continues to be challenged with slight bending and rising from bending. R. at 2597. By March 3, 2021, Plaintiff reported his back was feeling better, and he was able to get up from his bed or a chair with less difficulty, and he was able to walk better. R. at 2594–95. However, on March 10, 2021, Plaintiff reported increased soreness because he "tried to take a gallon of milk out of the fridge and it pulled through the low

back." R. at 2593. On March 17, 2021, Plaintiff reported that his pain improved, but he continued to be challenged with getting out of bed, and moving from sitting to standing although he did not require assistance to do so. R. at 2591. He also reported he was able to walk about one block. R. at 2591. During this visit, Plaintiff reported his current pain level as a four out of ten, but at best his pain was a two out of ten, and at worst his pain was an eight out of ten. R. at 2591. On March 31, 2021, Plaintiff reported that he was able to do his exercises easier recently, though he was having some pain that interfered with his sleep. R. at 2584. On April 7, 2021, Plaintiff reported continued bilateral lumbar pain and pain in his sacroiliac joint. R. at 2582.

### B. Relevant Medical Opinions

On December 3, 2020, Plaintiff's treating urologist, Dr. Rusin Walters, completed a residual functional capacity assessment. R. at 2385–92. Dr. Walters opined that Plaintiff could: occasionally lift and/or carry up to twenty pounds and frequently lift or carry up to twenty-five pounds. R. at 2386. He opined that Plaintiff could stand or walk less than two hours in an eight-hour workday, and must periodically alternate sitting and standing to relieve pain or discomfort. R. at 2386. Dr. Walters noted Plaintiff "can only walk for 5-10 minutes. Must alternate sitting for no more than 30 minutes." R. at 2386.

Plaintiff's primary care physician, Dr. Balabanova, completed a residual functional capacity assessment on January 12, 2021. R. at 2393–400. Therein, Dr. Balabanova found Plaintiff could occasionally lift up to ten pounds, and frequently lift less than ten pounds. R. at 2394. She also found that Plaintiff could stand and/or walk less than two hours in an eight-hour workday, and must periodically alternate sitting and standing to relieve pain and discomfort. In explaining how the evidence supports her conclusions, Dr. Balabanova noted: paralysis of sciatic nerve, invertebral disc syndrome, somatization disorder, flat foot condition, paralysis of ulnar

nerve, paralysis of 7th cranial nerve, neurogenic bladder, and pes planus. Dr. Balabanova further reiterated Kinesiotherapist Anthony Jones's findings that Plaintiff demonstrated -4/5 strength in his extremities, range of motion within functional limitations overall, with the exception of his hip flexion deficit on the left was worse than his right, that Plaintiff was unable to perform full trunk flexion, and that Plaintiff's grip strength bilaterally was good. R. at 2395.

### C. Plaintiff's Testimony at ALJ Hearing

At the ALJ hearing, Plaintiff testified that he medically retired from the Navy after he underwent surgery for testicular cancer. R. at 267, 270. Plaintiff explained that after his surgery, he developed nerve damage along the surgical scar and now experiences burning, pain, and pressure pulses in his left pelvic area. R. at 270. He testified that his pain did not allow him to concentrate in the Navy and he experiences mental fog. R. at 270, 277.

Plaintiff testified that he hurt his back in January 2021. R. at 266. He stated that since then, he struggles with many daily activities, including walking, showering, and dressing. R. at 266, 272. Plaintiff participated in physical therapy, and receives chiropractic care, and those have helped his pain get "a little better." R. at 272. To relieve his pain, Plaintiff takes Gabapentin, ibuprofen, or Tylenol, and he uses pain patches and a TENS unit. R. at 273, 276. Plaintiff also suffers from sleep apnea and uses a CPAP machine, and he has migraines three to four times per month. R. at 271–72. Plaintiff testified that he cannot bend properly and has sciatic pain in his left leg. R. at 273. He uses a cane to walk. R. at 276.

As for his daily activities, Plaintiff does physical therapy exercise for about thirty minutes, showers, and eats breakfast. R. at 274. Plaintiff testified that he spends about 4 hours per day on his recliner, and changes positions on his recliner throughout the day. R. at 274. Plaintiff explained he has problems sitting up for long periods of time because after about ten or fifteen

minutes he feels a pressure and burning sensation and he has to try and walk, stand up, or lay down. R. at 275. He can walk about one block before feeling pain and he must take a break. R. at 275. He goes to the store approximately three times per month just to buy small things, and only drives to the store and physical therapy. R. at 276.

### III. THE ALJ'S DECISION

To determine if the claimant is eligible for benefits, the ALJ conducts a five-step sequential evaluation process. 20 C.F.R. § 404.1520; *Mascio v. Colvin*, 780 F.3d 632, 634–35 (4th Cir. 2015) (summarizing the five-step sequential evaluation). At step one, the ALJ considers whether the claimant has worked since the alleged onset date, and if so, whether that work constitutes substantial gainful activity. § 404.1520(a)(4)(i). At step two, the ALJ considers whether the claimant has a severe physical or mental impairment that meets the duration requirement. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant has an impairment that meets or equals the severity of a listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. § 404.1520(a)(4)(iii). If the claimant does not have an impairment that meets or equals the severity of a listed impairment, the ALJ will determine the claimant's residual functional capacity, that is, the most the claimant can do despite her impairments. § 404.1545(a). At step four, the ALJ considers whether the claimant can still perform past relevant work given his or her residual functional capacity. § 404.1520(a)(4)(iv). Finally, at step five, the ALJ considers whether the claimant can perform other work. § 404.1520(a)(4)(v).

The ALJ will determine the claimant is not disabled if: they have engaged in substantial gainful activity at step one; they do not have any severe impairments at step two; or if the claimant can perform past relevant work at step four. *See Jackson v. Colvin*, No. 2:13cv357, 2014 WL 2859149, at *10 (E.D. Va. June 23, 2014). The ALJ will determine the claimant is disabled if the

7

claimant's impairment meets the severity of a listed impairment at step three, or if the claimant cannot perform other work at step five. *Id.*; *see also Mascio*, 780 F.3d at 634–35 (noting the ALJ will only determine the claimant's residual functional capacity if the first three steps do not determine disability).

Under this sequential analysis, the ALJ made the following findings of fact and conclusions of law:

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of June 27, 2020. R. at 228. At step two, the ALJ found that Plaintiff had the following severe impairments: malignant cancer of the left testicle status post orchiectomy, and arthritis. R. at 228–29. At step three, the ALJ considered Plaintiff's impairments and found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. R. at 232. The ALJ specifically examined Listing 1.18 relating to arthritis, and Listing 13.25 relating to cancer. R. at 232.

After step three, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform sedentary work, with the following limitations:

> The claimant is limited to lifting and carrying from the waist to chest level. The claimant is limited to occasional pushing and pulling. The claimant can walk no longer than one block at a time on a flat, even surface with the aid of a cane. The claimant can stand up to thirty (30) minutes at a time before sitting for a few minutes. The claimant has to avoid crawling and climbing ladders, ropes, and scaffolds, but he can perform other postural movements frequently. The claimant has to avoid fast-paced tasks, such as assembly line jobs involving production quotas. The claimant is limited to frequent fingering, grasping, handling, and reaching. The claimant has to avoid working around vibrations and hazards, such as moving dangerous machinery and unprotected heights. The claimant has to avoid extreme temperatures and humidity.

R. at 233.


In making this determination, the ALJ considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 C.F.R. § 404.1529 and SSR 16-3p." R. at 233.

At step four, the ALJ determined that Plaintiff was incapable of performing his past relevant work as a meteorologist, which is considered light exertional level, skilled work, and as a Navy intelligence specialist, which is generally performed at the light exertional level but actually performed at heavy exertional level, skilled work. R. at 240. While Plaintiff cannot resume his prior employment, the ALJ determined at step five that Plaintiff could perform other jobs that exist in significant numbers in the national economy. R. at 241. Relying on the testimony of the vocational expert, the ALJ concluded that Plaintiff could perform the requirements of the representative occupations of a callout operator and a document preparer. R. at 241. Thus, the ALJ determined that Plaintiff was not disabled from the alleged onset date, June 27, 2020, through the date of his decision, June 2, 2021. R. at 242.

## IV. STANDARD OF REVIEW

Under the Social Security Act, the Court's review of the Commissioner's final decision is limited to determining whether the decision was supported by substantial evidence in the record and whether the correct legal standard was applied in evaluating the evidence. *See* 42 U.S.C. § 405(g); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Substantial evidence is "evidence as a reasonable mind might accept as adequate to support a conclusion." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Britt v. Saul*, No. 19-2177, 2021 WL 2181704, at *2 (4th Cir. May 28, 2021) (quoting *Craig*, 76 F.3d at 589). The Court looks for an "accurate and logical bridge" between the evidence and the ALJ's

conclusions. *Woods v. Berryhill*, 888 F.3d 686, 694 (4th Cir. 2018); *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016); *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

In determining whether the Commissioner's decision is supported by substantial evidence, the Court does not "re-weigh conflicting evidence, make credibility determinations, or substitute our judgment for that of the [Commissioner]." *Craig*, 76 F.3d at 589. If "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for the decision falls on the [Commissioner] (or the [Commissioner's] delegate, the ALJ)." *Id.* (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)). Accordingly, if the Commissioner's denial of benefits is supported by substantial evidence and applies the correct legal standard, the Court must affirm the Commissioner's final decision. *Hays*, 907 F.2d at 1456.

## V. ANALYSIS

Plaintiff's appeal to this Court raises two challenges to the ALJ's decision. Plaintiff first argues that the Appeals Council erred by failing to consider new and material evidence regarding Plaintiff's need for a walker. ECF No. 11 at 9. Second, Plaintiff argues that the ALJ did not sufficiently analyze how Plaintiff's pain while sitting allows him to sit up to six hours per day. *Id.* at 13–14.

### A. The Appeals Council Did Not Err By Declining to Consider Plaintiff's New Evidence.

Plaintiff argues that the Appeals Council erred by failing to consider new and material evidence regarding Plaintiff's need for a walker. ECF No. 11 at 9–13. Plaintiff contends that the new evidence—a walker prescription—relates to the period on or before the ALJ's decision, and if considered, would result in Plaintiff meeting Listing 1.18(D) at step three. *Id.* In response, the Commissioner argues that the evidence regarding Plaintiff's need for a walker does not demonstrate "a medical need," and that Plaintiff does not meet the other requirements of Listing

1.18(D). ECF No. 14 at 11–15. The Commissioner further argues that the ALJ sufficiently accounted for an assistive device in formulating Plaintiff's RFC, and properly excluded walking or standing for long periods of time—obviating the need for Plaintiff to use a walker. *Id.* at 15.

When a claimant files a request for review by the Appeals Council during the administrative process, the Appeals Council may consider additional evidence if: "(i) the evidence is 'new,' i.e., 'not duplicative or cumulative,' (ii) the evidence is material, (iii) the evidence relates to the period on or before the date of the ALJ's decision, and (iv) that there is good cause for the failure to submit the evidence before the Commissioner." *Nichols v. Colvin*, 100 F. Supp. 3d 487, 512 (E.D. Va. 2014) (citing *Wilkins v. Sec'v. Dep't of Health & Human Servs.*, 953 F.2d 93, 95-96 (4th Cir. 1991)); *see also* § 404.970(a)(5), (b). "'Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.'" *Nichols*, 100 F. Supp. 3d at 96 (quoting *Wilkins*, 953 F.2d at 96) (additional citations omitted). Accordingly, a Plaintiff must establish these elements to justify this Court's remand back to the ALJ. *Id.*; 42 U.S.C. § 405(g)).

Here, Plaintiff submitted evidence to the Appeals Council from Pivot Physical Therapy dated April 7, 2021 to July 1, 2021, and records from the VA Medical Center dated March 10, 2021 to July 19, 2021. R. at 2. The relevant records from Pivot Physical Therapy included a May 19, 2021, status report from Plaintiff's physical therapist, D.P.T. McCann, in which the physical therapist wrote that he "[a]dvised to [patient] that it may be beneficial for his back pain and episodes of instability to be using a wheeled walker for when he needs to be walking or standing for longer periods of time." R. at 170. Additionally, Plaintiff's progress report from that same day reflects "[d]iscussed with [patient] and advised it may be in his best interest to utilize wheeled walker (preferably rollator with seat) to take load off his spine and improve his standing and walking tolerance." R. at 183, 194, 196. The relevant records from the VA Medical Center

11

included a July 16, 2021 treatment note from Plaintiff's primary care physician, Dr. Balabanova, reflecting that Plaintiff's physical therapist "recom[m]ended wheeled walker" and that he would "order wheeled walker." R. at 40, 42.

Plaintiff submitted this evidence to the Appeals Council when he requested review of the ALJ's decision. R. at 1. The Appeals Council declined to consider the new evidence in reviewing the ALJ's decision, noting that it "does not show a reasonable probability that it would change the outcome of the decision." R. at 2.

Substantial evidence supports the Appeals Council's decision to decline to consider the additional records Plaintiff submitted. First, D.P.T. McCann's treatment note stated that a walker may be beneficial "for when [Plaintiff] needs to be walking or standing *for longer periods of time.*" R. at 170. Neither D.P.T. McCann nor Dr. Balabanova defined "for longer periods of time," but in the same vein, neither found that Plaintiff would need a walker under all circumstances. Additionally, a prescription for a walker, standing alone, does not necessarily dictate that Plaintiff's walker was "medically necessary" so as to meet Listing 1.18(D). *See Fletcher v. Colvin*, No. 1:14cv380, 2015 WL 4506699, at *8 (M.D.N.C. July 23, 2015) ("a prescription or the lack of a prescription for an assistive device is not necessarily dispositive of medical necessity.").

Second, there is not sufficient evidence to warrant remand that Plaintiff's possible benefit from using a walker relates to the period on or before the ALJ's decision. D.P.T. McCann's record was dated just over *two weeks after* the ALJ's decision, and Dr. Balabanova did not actually order the walker until *six weeks after* the ALJ's decision. *See e.g.*, R. at 40–42, 170. R Accordingly, Plaintiff went without a walker for at least six weeks after the ALJ's decision. Neither D.P.T. McCann nor Dr. Balabanova suggested that Plaintiff has needed a walker for months, or that his need for a walker was urgent.

Under these circumstances, substantial evidence supports the Appeals Council's decision that the newly submitted evidence does not show a reasonable probability that it would change the outcome of the ALJ's decision. Although there is some evidence suggesting Plaintiff could *now* have a medically necessary walker that *could now* qualify him to meet a listing, "[t]he substantial evidence standard 'presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts.'" *Dunn v. Colvin*, 607 F. App'x 264, 266 (4th Cir. 2015) ("'An administrative decision is not subject to reversal merely because substantial evidence would have supported an opposite decision.'") (quoting *Clarke v. Bowen*, 843 F.2d 271, 272–73 (8th Cir. 1988)). Thus, remand is not warranted on this ground.

### B. The ALJ Sufficiently Explained How Plaintiff's Pain Allows Him to Sit Up to Six Hours Per Day, and the ALJ's Finding is Supported by Substantial Evidence.

Plaintiff also argues that the ALJ failed to provide a substantive analysis of how Plaintiff's pain caused by his impairments allows him to sit up to six-hours per day. ECF No. 11 at 13. Plaintiff contends that the ALJ decision "provides next to no discussion of [Plaintiff's] repeated and well-supported claim that he cannot sit without pain due to pressure on his groin area. *Id.* at 14. In response, the Commissioner argues that the ALJ appropriately accounted for Plaintiff's sitting complaints by restricting him to sedentary work with a sit/stand option, and that limitation is supported by substantial evidence in the record. ECF No. 14 at 16–17.

After step three of the sequential analysis, the ALJ must determine the claimant's RFC. § 404.1520(a)(4). RFC is defined as "the most" a claimant "can still do despite [his or her] limitations." § 404.1545(a)(1). In making the RFC determination, the ALJ must consider "all the relevant medical and other evidence" in the record and incorporate any impairments supported by objective medical evidence, and those impairments based on the claimant's complaints. §§ 404.1545(a)(3), 404.1529(a); *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015) (citing SSR

96–8p, 1996 WL 374184 (July 2, 1996)). In determining the claimant's RFC, the ALJ must "identify the individual's functional limitations" and then assess the individuals "work-related abilities on a function-by-function basis," including the claimant's physical abilities, mental abilities, and any other work-related abilities affected by his or her impairments. *Mascio*, 780 F.3d at 636. The ALJ must include a "narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.* The ALJ also must "build an accurate and logical bridge from the evidence to [the ALJ's] decision" in order to allow the reviewing court to evaluate the ALJ's decision. *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).

To evaluate a claimant's subjective complaints in the context of an RFC determination, the ALJ must conduct a two-step analysis. *Arakas v. Comm'r, Soc. Sec. Admin.*, 983 F.3d 83, 95 (4th Cir. 2020); §§ 404.1529(a), 416.929(a). At step one, the ALJ must determine "whether objective medical evidence presents a 'medically determinable impairment' that could reasonably be expected to produce the claimant's alleged symptoms." *Id.* (citing § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3). At step two, the ALJ must evaluate the intensity and persistence of the alleged symptoms to determine how they affect the claimant's ability to work and perform basic work activities. *Id.* (citing § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4). To evaluate the individual's symptoms, the ALJ looks to whether Plaintiff's subjective complaints could "reasonably be accepted as consistent with the objective medical evidence and other evidence." *Craig*, 76 F.3d at 595. However, the ALJ cannot "disregard an individual's statements about the intensity, persistence, and limiting effects of symptoms solely because the objective medical evidence does not substantiate" them. *Arakas*, 983 F.3d at 95 (citing SSR 16-3p, 2016 WL

14

1119029 at *5) (internal quotation omitted); *Walker v. Bowen*, 889 F.2d 49, 49 (4th Cir. 1989) ("there need not be objective evidence of the pain itself or the intensity."). Because symptoms cannot always be measured objectively through clinical or laboratory diagnostic techniques, at step two, the ALJ must consider the entire case record to assess the limiting effects of the individual's symptoms. *Arakas*, 983 F.3d at 95.

Here, the ALJ sufficiently evaluated Plaintiff's subjective complaints regarding his pain while sitting. The ALJ considered Plaintiff's medically determinable impairments along with his medical history, and found that his medically determinable impairments could reasonably be expected to cause his alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. R. at 234. The ALJ noted that after Plaintiff's orchiectomy, he experienced post-surgical groin pain, but nonetheless presented without acute distress. R. at 235 (citing R. at 637–38). Further, although Plaintiff alleged that his pain prevented him from being able to concentrate, his longitudinal mental status exams demonstrated his concentration was intact and good mental status exam findings overall. R. at 235 (citing R. at 768, 782, 2435). Importantly, the ALJ recognized that in January 2019, Plaintiff was working half days instead of touring seven buildings, which involved going up and down flights of stairs on a daily basis, and was a source of his pain. R. at 235 (citing R. at 514). The ALJ recognized Plaintiff's difficulty with that type of work, and noted that the RFC with a sit/stand option, the use of a cane, and other limitations would accommodate Plaintiff's impairments. R. at 235.

Moreover, the ALJ detailed that Plaintiff's concentration, attention, and memory remained intact despite reports of pain. R. at 235 (citing R. at 778, 782). The ALJ explained that Plaintiff denied feeling tired, and performed his usual daily activities. R. at 236 (citing R. at 647–48). On

other occasions within the relevant period, Plaintiff was ambulating with a cane but had normal reflexes and five out of five strength in his extremities. R. at 236 (citing R. at 711). Additionally, Plaintiff reported his pain medication helped his symptoms, and his pain was better controlled with acupuncture, acetaminophen, and gabapentin. R. at 236 (citing R. at 711 ("some improvement of his pain with addition of amitriptyline), 650 ("[p]ain better controlled since starting acupuncture"), 712 (noting acetaminophen prescription for mild-moderate pain every six hours), 633 ("[s]till limits his ADLs and sleeping but the gabapentin does help"). The ALJ further noted that since Plaintiff's alleged onset date, there was no significant change in his overall functioning. R. at 236. Finally, the ALJ concluded that it was appropriate to limit Plaintiff to sedentary, rather than light, exertional level work, as well as providing a sit/stand option in Plaintiff's RFC to give deference to Plaintiff's alleged pain. R. at 237, 239.

Thus, the ALJ sufficiently explained how Plaintiff's pain while sitting allows him to sit up to six hours per day. The ALJ credited Plaintiff's complaints of pain while sitting, and limited him to sedentary work with a sit/stand option. The ALJ specifically explained that Plaintiff would not be required to sit for six hours consecutively, but rather, "can stand up to thirty [] minutes at a time before sitting for a few minutes." R. at 232–33. Accordingly, the ALJ sufficiently explained how Plaintiff's complaints of pain while sitting are accommodated within his RFC, and remand is not required on this ground.

## VI. RECOMMENDATION

Because substantial evidence supports the Commissioner's decision and the correct legal standard was applied, the undersigned **RECOMMENDS** that Plaintiff's Motion for Summary Judgment, ECF No. 10, be **DENIED**, the Commissioner's Motion for Summary Judgment, ECF No. 13, be **GRANTED**, the final decision of the Commissioner be **AFFIRMED**, and that this

matter be **DISMISSED WITH PREJUDICE.**

## VII. REVIEW PROCEDURE

By receiving a copy of this Report and Recommendation, the parties are notified that:

1. Any party may serve on the other party and file with the Clerk of the Court specific written objections to the above findings and recommendations within fourteen days from the date this Report and Recommendation is forwarded to the objecting party, *see* 28 U.S.C. § 636(b)(1)(C) and Federal Rule of Civil Procedure 72(b), computed pursuant to Federal Rule of Civil Procedure Rule 6(a). A party may respond to another party's specific written objections within fourteen days after being served with a copy thereof. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

2. A United States District Judge shall make a *de novo* determination of those portions of this Report and Recommendation or specified findings or recommendations to which objection is made. The parties are further notified that failure to file timely specific written objections to the above findings and recommendations will result in a waiver of the right to appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984), *cert. denied*, 474 U.S. 1019 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984), *cert. denied*, 467 U.S. 1208 (1984).

The Clerk is **DIRECTED** to forward a copy of this Report and Recommendation to the counsel of record for Plaintiff and the Commissioner.

/s/ Lawrence R. Leonard
United States Magistrate Judge

Norfolk, Virginia
December 20, 2022